# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 03-00245 |
| | ) | |
| FREDERICK H. BANKS, | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

This matter is before the Court on several filings/motions by Defendant Frederick H. Banks ("Defendant" or "Banks") relating to this Court's Order of July 17, 2008 (Docket No. 383). In that Order, the Court denied Defendant's Motion for a New Trial under Rule 33 of the Federal Rules of Criminal Procedure as the motion was not timely filed, denied Defendant's motion to dismiss and found that it did not have jurisdiction to entertain his motion to order the Government to "redact and release" certain records. (Docket No. 383). On July 25, 2008, Defendant filed a Notice of Appeal and Motion for Reconsideration of that Order. (Docket No. [387]). Thereafter, the Court ordered the Government to respond to Defendant's motion, and such Response was filed on August 8, 2008. (Docket No. 394). On August 19, 2008, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and a Reply to the Government's Response. (Docket No. [396]). The Court again ordered the Government to respond to this motion/reply, and such Reply was filed by the Government on September 12, 2008. (Docket No. 399). Currently pending before the Court are Defendant's Motion for Reconsideration [387] and Motion to Dismiss [396]. Based on the following, both motions are DENIED.

1. *Defendant's Motion for Reconsideration of the Court's July 17, 2008 Order*

Defendant assuredly is aware of the standard for reconsideration at this point given his penchant for filing such motions, but the Court nevertheless will restate it here. A court may grant

a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also United States v. Croce*, 355 F. Supp. 2d 774, 775 (E.D. Pa. 2005) (applying the same standard to a motion for reconsideration in a criminal case).

At the outset, to the extent that Defendant's Motion seeks reconsideration of the July 17, 2008 Order denying his motion to dismiss or motion to order the Government to release certain records, said Motion is denied as Defendant has not demonstrated that reconsideration is warranted under the above stated standard. In addition, to the extent that Defendant's Motion seeks reconsideration of this Court's July 17, 2008 Order (Docket No. [383]) dismissing his Motion for a New Trial, said Motion is also denied for the following reasons.

Defendant argues that a manifest injustice would result if the Court did not reconsider its ruling denying his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. (Docket No. [387]). Defendant admits that his motion was not filed within the explicit three (3) year time period established for filing a motion for a new trial under Rule 33, but maintains that the Court should equitably toll the statute of limitations given that he did not obtain the reports attached to his motion until 2008. *Id*. He alleges that the FBI withheld the reports "specifically to curtail the filing of the motion for a new trial." *Id*. In response, the Government takes the position that while Defendant's motion was properly denied by the Court in the first instance as untimely, that Rule 45 of the Federal Rules of Criminal Procedure, as amended in 2005, "would seem to permit the [C]ourt

the discretion to grant nunc pro tunc consideration of his motion in subsection (B)(1) provided that the [C]ourt believes that 'good cause' was shown that Banks' failure to act resulted from 'excusable neglect.'" (Docket No. 394 at 5). The Government then maintains that Defendant has not demonstrated excusable neglect in his various filings. (*Id*.). The Government also contends that Defendant's filings demonstrate an awareness of the statute of limitations set forth in Rule 33 and considering Defendant's pending litigation in the United States District Court for the District of Columbia to acquire the reports that are the basis for his new trial motion as well as his "barraging" this Court with countless motions "which were utterly lacking merit" during that period, that Defendant should have moved the Court for an enlargement of time prior to the expiration of the statute of limitations in order to preserve his ability to file a motion for new trial.[1] (Docket No. 394 at 7). The Government also asserts that, even if the Order is reconsidered, Defendant's claims fail as a matter of law. (Docket Nos. 394, 399).

As stated, Defendant has filed a Motion for a New Trial based on alleged newly discovered evidence under Rule 33(a) requesting the Court "to vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Rule 33(b)(1) sets forth the applicable

---

[1] The Court notes that while Defendant is not a licensed attorney, he is clearly an experienced litigant in the federal courts. He has filed countless pleadings in this criminal action, Crim. No. 03-245, and another criminal action in this district before the Honorable Joy Flowers Conti, Crim. No. 04-176, as well as a multitude of civil actions in this district. This Court is also aware that he has filed many civil actions in other districts across the United States. In a recent filing with this Court, Defendant attempted to file his appearance in this case and claims the following: that he is a "Constitutional lawyer holding a Masters degree from a Native American Law School"; that he is "currently licensed to practice law in a tribunal court"; and that he attends correspondence courses at Brigham Young and Asheworth Universities while serving his lengthy federal sentence. (Docket No. 404 at 2). Defendant maintains that he "has been a participant in more than 200 Federal cases and Federal Appeals along with dozens of state cases." (*Id*. at 2). While certain of Defendant's statements clearly lack credibility, this Court does not believe that his estimate of 200 federal cases and appeals is overstated, as he routinely appeals any adverse order against him in this matter.

limitations period for filing such motion and requires that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." FED. R. CRIM. P. 33. In *United States v. Figueroa*, the District Court for the Eastern District of Pennsylvania found that Rule 45(b) was applicable to a motion for a new trial based on newly discovered evidence under Rule 33(b)(1). *United States v. Figueroa*, Crim. A. No. 00-0094, 2007 WL 2345283, at *3 (E.D.Pa. August 15, 2007). Rule 45(b) titled Extending Time, provides that:

> (1) In General. When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
>
>> (A) before the originally prescribed or previously extended time expires; or
>>
>> (B) after the time expires if the party failed to act because of excusable neglect.
>
> (2) Exception. The court may not extend the time to take any action under Rule 35, except as stated in that rule.

FED. R. CRIM. P. 45. In *Figueroa*, the district court considered the following factors to determine whether the circumstances constitute excusable neglect: "(1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for that delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Figueroa*, 2007 WL 2345283 at *3 (citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Stutson v. United States*, 516 U.S. 193, 196 (1996) (suggesting the *Pioneer* factors apply in the criminal context); *Kohl's Dep't Stores, Inc. v. Levco-Route 46 Assoc., L.P.*, 121 F. App'x 971, 974-76 (3d Cir.2005)(not precedential) (discussing "excusable neglect" in the context of Fed.R.Civ.P. 60(b)(1))).

However, as noted by the Government, (*see* docket no. 396), given the discussion in the

Advisory Committee Notes to Rule 45 regarding the 2005 Amendments ("Notes"), it is not entirely clear that the excusable neglect standard in Rule 45(1)(B) was intended to apply to Rule 33(b)(1). The Notes contain several references to the seven day filing period set forth in Rule 33(b)(2) and make no reference to the three (3) year newly discovered evidence standard. For example, the Notes provide that:

> Rule 45(b) has been amended to conform to amendments to Rules 29, 33, and 34, which have been amended to remove the requirement that the court must act within the seven-day period specified in each of those rules if it sets another time for filing a motion under those rules.
>
> Currently, Rules 29(c)(1), 33(b)(2), and 34(b) require the defendant to move for relief under those rules within the seven-day periods specified in those rules or within some other time set by the court in an order issued during that same seven-day period. Courts have held that the seven-day rule is jurisdictional.
>
> ...
>
> Rule 45(b)(2) currently specifies that a court may not extend the time for taking action under Rules 29, 33, or 34, except as provided in those rules.
>
> Assuming that the current provisions in Rules 29, 33, and 34 were intended to promote finality, there is nothing to prevent the court from granting the defendant a significant extension of time, under those rules, as long as it does so within the seven-day period. Thus, the Committee believed that those rules should be amended to be consistent with all of the other timing requirements in the rules, which do not force the court to rule on a motion to extend the time for filing, within a particular period of time or lose jurisdiction to do so. The change to Rule 45(b)(2) is thus a conforming amendment.

FED. R. CRIM. P., 45 Advisory Comm Notes, 2005 Amendments. Similar language is contained in the Advisory Committee Notes on the 2005 Amendments to Rule 33. *See* FED. R. CRIM. P. 45, Advisory Comm Notes, 2005 Amendments ("Rule 33(b)(2) has been amended to remove the

requirement that the court must act within seven days after a verdict or finding of guilty if it sets another time for filing a motion for a new trial. This amendment parallels similar changes to Rules 29 and 34. Further, a conforming amendment has been made to Rule 45(b)(2).").

Here, Defendant filed his new trial motion on June 26, 2008, (Docket No. 379) when the jury verdict was rendered in this case on October 15, 2004 (Docket No. 93). His motion was clearly filed outside of the three-year limitations period established by Rule 33(b)(1) and is indeed, eight months after the October 15, 2007 deadline. Defendant filed suit in November 2006 to obtain documents relating to his case from various federal government agencies, including the FBI, under the Freedom of Information Act ("FOIA"). *See Frederick H. Banks v. Department of Justice, et al.*, Civ. A. No. 06-1950-EGS, Docket No. 1 (D.C. Nov. 15, 2006). On March 21, 2007, the FBI requested an additional nine months or until December 1, 2007 to process the 2,500 documents that Defendant had requested due to various backlogs and a need for additional time to review the documents. *Id.*, Declaration of Hardy, Docket No. 23-7 at 20. This nine month extension of time requested by the Government ensured that Defendant's motion for a new trial based on any documents received in that action could not be filed within the statutory period.

Then, on March 16, 2008, the district court issued a Memorandum Opinion and Order granting in part and denying in part the government agencies' motion to dismiss/motion for summary judgment. *Banks v. Department of Justice*, 538 F.Supp.2d 228 (D.D.C. 2008). In that decision, the district court noted that the FBI had yet to process all of the 2,500 documents that Defendant had requested, denied the motion to dismiss, without prejudice, and ordered the FBI to file a status report within 45 days. *Banks*, 538 F.Supp.2d at 237 n. 7. The FBI's status report and corresponding affidavits were filed on May 1, 2008 which indicated that Defendant had been

advised of the copying costs to process his requests but that Defendant refused to pay the applicable copying costs and would not agree to limit the number of pages in his request. *Banks*, Civ. A. No. 06-1950-EGS, at Docket Nos. 33, 35 and 37. As a result, the FBI provided Defendant with 100 pages of records, free of charge. *Id.*, Docket No. 33. At no time during this period did Defendant seek an enlargement of time.

The Government maintains that Defendant's *pro se* status should not excuse his failure to meet the applicable deadline as his filings demonstrate that he was aware of the three (3) year deadline and knew that his FOIA requests could not be completed within that time frame. (Docket No. 399 at 4-5). The Government also contends that these facts weigh against Defendant in that the reasons for the delay in filing were reasonably within Defendant's control and that his actions were not in good faith. (*Id.*). The Government then argues that the prejudice prong of the excusable neglect analysis weighs in its favor given that it has started the process of returning the evidence produced at trial to the appropriate persons. (*Id.*).

The Government's position arguing against this Court finding excusable neglect here is strong; however, regardless of whether the facts here demonstrate that Defendant could establish excusable neglect under Rule 45, Defendant's motion for reconsideration also fails because Defendant has not established a right to a new trial based on the FBI reports he has submitted as the basis of his motion. The Court is mindful of the legal standard applicable to Defendant's motion for a new trial, which requires that:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably

7

> produce an acquittal.

*United States v. DiSalvo*, 34 F.3d 1204, 1215 (3rd Cir. 1994); *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir.1976); *United States v. Jasin*, 280 F.3d 355, 361 (3d Cir.2002); *United States v. Cimera*, 459 F.3d 452 (3d Cir. 2006); *United States v. Kelly*, 539 F.3d 172 (3d Cir. 2008). "Although the decision to grant or deny a motion for a new trial lies within the discretion of the district court, the movant has a 'heavy burden' of proving each of these requirements." *Cimera*, 459 F.3d at 458 (citing *United States v. Saada*, 212 F.3d 210, 216 (3d Cir.2000)); *United States v. Rocco*, 587 F.2d 144, 146 (3rd Cir. 1978)("defendant bears the heavy burden of establishing [the] five requirements."). In addition, the Court is not required to hold an evidentiary hearing on a defendant's motion for a new trial if all five elements cannot be established. *See Iannelli*, 528 F.2d at 1292; *See also United States v. Gilsenan*, 949 F.2d 90, 97 (3d Cir. 1991)("a hearing need not be held at the behest of a party whose allegations if established would not entitle it to relief."). Finally, "Courts should exercise great caution in setting aside a verdict reached after fully-conducted proceedings, and particularly so where the action has been tried before a jury." *Kelly*, 539 F.3d at 182 (internal quotations omitted).

In his filings, Banks maintains that three FBI reports discovered as a result of his requests under the Freedom of Information Act constitute "newly discovered evidence" and that "[e]ach one of these newly discovered records of evidence warrants the granting of this motion because the outcome would have been different had Banks had these records before trial." (Docket No. 379). The Government, however, contends that one of the records contains, at best, impeachment evidence which is not material to Defendant's conviction and that the other two records are not newly discovered. (Docket No. 399 at 5-6). In any event, the Government argues that these FBI reports,

if they had been presented at trial, would not have resulted in Defendant's acquittal. (*Id*. at 6).

Indeed, the Government argues that the evidence presented at trial "overwhelmingly established" that Defendant committed the crimes for which he was convicted, i.e., mail fraud (Counts One, Two and Three), criminal copyright infringement (Count Four) and money laundering (Count Five). (Docket No. 396 at 7). The Government also argues that the evidence at trial clearly demonstrated that Defendant had the equipment necessary to create unauthorized counterfeit copies of certain software, used aliases of former acquaintances to sell these copies through Amazon.com and then received the proceeds from these sales by way of his National City bank account. (*See* Docket No. 396 at 7-11). Further, the Government states it introduced at trial handwriting exemplars of Defendant which were identical to those on the packages containing the counterfeit software. (*Tr. Trans. 10/1/04* at 123-5). Accordingly, the Court agrees that the evidence against Defendant strongly favored a conviction and that the FBI reports he submits at this juncture, if available at trial, would not have in all probability produced an acquittal on any of the charges. *See Kelly*, 539 F.3d at 186-190. The Court now turns to the submitted reports and analyzes each, in turn.

        a.     <u>FBI Report dated 2/6/2003</u>

Defendant first presents an FBI report dated February 6, 2003 discussing an interview with a male employee of Mail Boxes, Etc. (Docket No. 379 at 7). The report states generally that Mail Boxes, Etc. was leasing box number 353 to Defendant and that the interviewee (who is not identified in the report except as a male) did not remember personally opening that mailbox for Defendant or if he received any complaints regarding the mailbox. (*Id*.). Defendant asserts that this document is newly discovered evidence and argues the following.

> Mailboxes Etc. representative did not remember opening the box for Banks and did not recall any complaints regarding its use. Banks was accused of using the Box to defraud. If Banks would have had the records he could have confronted his accusers more effectively. This violated Banks' Sixth Amendment Right to confront his accusers.

(Docket No. 379 at 2). The Government does not contest that this report constitutes newly discovered evidence. (Docket No. 394 at 13). Instead, it asserts that Defendant's claim for a new trial based on the discovery of this report is frivolous as the report contains information gleaned from an interview of a male employee of Mailboxes, Etc. who did not testify at trial. (*Id.*). The Government represents that the only employee of Mailboxes, Etc. to testify at trial was Debbie Tanner, the manager of that store. (*Id.*). The Government also maintains that as the interviewee referenced in the report did not testify, the report constitutes inadmissible hearsay evidence and could not have been used to impeach Ms. Tanner who had no knowledge concerning the interviewee's inability to remember Defendant, the opening of the mailbox account or whether there were any complaints about the mail box in question. (Docket No. 399 at 5). In reply, Defendant asserts that:

> [i]f Banks could have introduced the male interview[ee] from Mailboxes Etc. he could [sic] question Tanner about it and at the very least could have called the Mailbox employee as a witness in his defense. The report did concern Tanner because she was the manager/representative of Mailboxes Etc. and authorized to answer questions about her employees including the interview [sic] which as manager she certainly had knowledge of. Thus, if Banks would have had the report he could have used it to more effectively confront Tanner. The importance of this is obvious.

(Docket No. 396 at 2).

Upon consideration of the parties' submissions, the Court finds that Defendant has not met his "heavy burden" to demonstrate that the FBI report dated February 6, 2003 constitutes newly

discovered evidence pursuant to the standard articulated in *DiSalvo/Ianelli*.

As stated, it appears that the Government does not contest that Defendant was not provided with the instant report prior to trial. The Court will therefore assume that the evidence was, in fact, discovered by Defendant after trial. Regarding diligence, Defendant alleges that the records were withheld in bad faith despite his counsel's pretrial motion for discovery under *Brady* and the Jencks Act. However, production of this report by the Government was not required under either authority as the evidence in the report is not material to Defendant's guilt of the crimes charged under *Brady* and disclosure under the Jencks Act was not necessary as the interviewee did not testify at trial. *See United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006)("[t]o establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment."); *see also* 18 U.S.C. § 3500(a)("[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). Defendant also does not set forth any facts that demonstrate why neither he nor his counsel could not obtain such evidence prior to his trial.

To meet his heavy burden to establish that a new trial is warranted, Defendant must prove that the newly discovered evidence is not "merely cumulative or impeaching." *DiSalvo*, 34 F.3d at 1215. The instant FBI report indicates that the male employee did not remember opening the mailbox for Defendant or recall any complaints about that mailbox. (Docket No. 379 at 7). The male did not testify at trial. Accordingly, the report could not be used to impeach him. Defendant's purported use of this report, as outlined in his filings, would be for impeachment, specifically to

confront Ms. Tanner, who did testify. During her testimony, Tanner identified Defendant as the owner of mailbox 353 at the Mailboxes Etc. store and stated that she did not recall any other person picking up mail from that box. *Tr. Trans.* 9/29/04 at 133-134. She also verified that Defendant did not attempt to conceal his identity in any way while using or applying for the mailbox. *Id*. at 139.

This Court has recognized that the withholding of impeachment materials by the Government could potentially rise to the level of a *Brady* violation. *See Breakiron v. Horn*, Civ. A. No. 00-300, 2008 WL 4412057, at *18 (W.D. Pa. Sept. 24, 2008)(quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)(citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)))("Impeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule."). However, as previously discussed, the content of the instant FBI report, or any potential testimony offered by the interviewee in connection with the same, is not material to Defendant's conviction so that the Government's non-disclosure constitutes a *Brady* violation.[2]

Finally, Defendant has not demonstrated that this report is of such a nature that it would "probably produce an acquittal." *Cimera*, 459 F.3d at 458. Defendant was convicted on "charges

---

[2] This matter is factually distinguishable from *Breakiron*. In *Breakiron*, this Court found that state prosecutors committed *Brady* violations for failing to disclose to the defense certain impeachment evidence of a government witness during defendant's murder trial. *Breakiron*, 2008 WL 4412057, at *27-30. The government witness was a jailhouse informant who testified at trial regarding statements made by the defendant to him about the murder, including the manner in which he carried out the murder. *Id*. at 4. The impeachment evidence that was not disclosed included the following: (1) two letters drafted by the witness to the District Attorney's Office requesting benefits for himself and his brother in another criminal action in exchange for his testimony; (2) that the witness was a named suspect in yet another pending criminal action at the time of his testimony; and (3) that a prior conviction of the witness was a *crimen falsi* conviction which under Pennsylvania law could have been used to impeach his credibility at trial. *Id*. at 28-29. Ultimately, this Court found that the non-disclosure of such evidence was material to the defendant's conviction of premeditated murder and ordered the Commonwealth to conduct a new trial to determine if the defendant was guilty of first degree murder or a lesser degree of murder. *Id*. at 51.

of mail fraud, criminal copyright infringement, uttering and possessing counterfeit or forged securities, and witness tampering." *Vampire Nation*, 451 F.3d at192. He does not, however, identify which of these charges of conviction would result in an acquittal based on this new evidence. In light of the evidence adduced at trial, which the Government argues was "overwhelming" and the Court agrees strongly favored a conviction, it cannot be said that this singular FBI report which is of limited or no evidentiary value would probably result in an acquittal of any of the charges.

Accordingly, there is no legal basis for Defendant's motion for a new trial as a result of the February 6, 2003 FBI Report submitted to the Court.

      b.      <u>FBI Report Dated 3/27/2003</u>

Defendant has also submitted an FBI Report dated March 27, 2003 which he claims is newly discovered evidence. (Docket No. 379). This Report contains the substance of an interview conducted by an unidentified FBI agent with an unidentified person (as the names on the document are redacted) describing unauthorized access to the interviewee's Social Security number and credit accounts that were opened in a different name using that Social Security number. (Docket No. 379 at 6). The Government has submitted to the Court an unredacted copy of the same report which identifies the interviewee as Theresa W. Stanionis and the FBI agent as Timothy J. Pivnichny. (Docket No. 394-3). Ms. Staniosnis testified at trial that she did not fill out an application for a Sears Credit Card that contained her Social Security number under the name Justin Bruce. *Tr. Trans. 9/28/04* at 153-157.

Defendant argues the following regarding this report.

> A witness in this case complained that she has had problems in the
> past with someone using her Capital One bank account without

13

> permission and did not receive information about credit card usage. Banks was accused of as part of the government's case as having used the witnesses social security information to obtain credit while impersonating Justin Bruce. The information in the record withheld by the government would have enabled Banks' counsel to more effectively cross examine the witness and would have shown that someone from her past had access to and was using her credit information not Banks.

(Docket No. 379 at 2). In response, the Government maintains that this claim is also frivolous in that this report was provided to Banks' trial counsel, Ronald W. Hayward, Esquire on July 7, 2004. (Docket No. 394). The Government has submitted evidence in support of this contention, including a letter dated July 7, 2004 by Assistant United States Attorney Paul Hull, Esquire to Mr. Hayward. (*See* Docket Nos. 394-2 and 394-3). The letter describes certain Jencks/Brady material submitted to Defendant's counsel on that date including the March 27, 2003 FBI Report. (*Id*.). The last page of the letter is executed by Ronald W. Hayward, Esquire on July 7, 2004 under a passage which provides that "I hereby acknowledge receipt of the above-mentioned Jencks/Brady material." (*Id*.).

Given this evidence submitted by the Government, the Court finds that the March 27, 2003 FBI Report does not constitute newly discovered evidence because Defendant's trial counsel acknowledged that he was provided with a copy of the same. *See Jasin*, 280 F.3d at 365 n. 9 ("if a court determines as a matter of law that evidence is not newly discovered, then no matter what the court's conclusions are as to the other *Iannelli* factors, it must deny the defendant's Rule 33 motion."). In addition, the trial record demonstrates that defense counsel declined to cross-examine Ms. Stanionis. *Tr. Trans. 9/28/04* at 157. At this juncture, the Court can only assume that Defendant's trial counsel had this report but declined to use it at trial for strategic reasons.

Accordingly, Defendant's motion for a new trial based on his submission of the March 27, 2003 FBI Report fails as a matter of law.

### c. FBI Report Dated 3/19/2003

Lastly, Defendant submits a March 19, 2003 FBI Report prepared by an unidentified agent. (Docket No. 379 at 8). The Report generally describes the agent's surveillance at 52 South 8th Street, Pittsburgh, PA on that date. (*Id.*). Defendant argues that this report demonstrates that "two mysterious vehicles were observed by the FBI, [and] to the extent that these vehicles are not connected to Banks this evidence was exculpatory because it would have linked one of Banks' employees to Giant Eagle where it was alleged that Banks used faxes to defraud." (Docket No. 379). In response, the Government maintains that such report does not constitute newly discovered evidence as the evidence that it allegedly refutes was not admitted in the trial which resulted in his conviction in this matter, but was related to his conviction at Criminal No. 04-176. (*See* Docket No. 399 at 6 (citing Docket No. 1, Cr. No. 04-176)("Here, Banks has mixed up his two prosecutions for there was no evidence Banks had faxed anything from Giant Eagle in this case. In fact, that evidence was involved in his other trial before the Honorable Joy Flowers Conti where he was alleged to have faxed from Giant Eagle a bill as a second form of identification for an accomplice to have opened a Mailboxes Etc. account for him in a false name.")).

Having reviewed the trial record, the Court agrees with the Government that no evidence was presented at the trial of the charges against Defendant in this action, i.e., Criminal Action No. 03-245, involving Defendant sending faxes from Giant Eagle, as he alleges. The Court also accepts the Government's representation that such evidence was admitted in the trial at Criminal Action No. 04-176 before the Honorable Joy Flowers Conti. Accordingly, as the vehicles and Giant Eagle receipt mentioned in this report have no relevance to the instant action, there is no basis for this Court to grant Defendant's motion requesting a new trial as to same.

d.      Conclusion

Based on the foregoing, Defendant's motion for reconsideration [387] is DENIED. Defendant has not demonstrated that manifest injustice would result if the Court did not reconsider its earlier ruling, as his motion for a new trial would fail as a matter of law. To the extent that Defendant seeks an appeal, this Court takes no further action.

        2.      *Defendant's Motion to Dismiss*

Defendant also has filed a Motion to Dismiss the Second Superseding Indictment under Rule 12 of the Federal Rules of Criminal Procedure [396] in conjunction with his Reply as discussed above and requests a hearing regarding the same. Defendant maintains that the Second Superseding Indictment should be dismissed because he is a Lakota Sioux Indian and this Court lacks jurisdiction to impose his sentence. (Docket No. 396 at 3-4). In response, the Government takes the following positions: (1) the motion should be denied as untimely; (2) the motion is not properly before the Court as it constitutes a second or successive motion to vacate under § 2255; and, (3) that his substantive claim lacks merit in that even if Defendant had demonstrated that he was an Indian, which he has not, that the "district court correctly exercised subject matter jurisdiction over his federal offenses which were committed outside of any Indian country." (Docket No. 399 at 9-15).

Defendant's motion is untimely. *See* FED. R. CRIM. P. 12(b)(3)("at any time *while the case is pending*, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction")(emphasis added). Further, his motion appears to contest this Court's jurisdiction to impose his sentence and the Court construes it as a second or successive § 2255 petition. Petitioner is statutorily barred from pursuing a second or successive § 2255 petition in this Court, absent certification from the United States Court of Appeals for the Third Circuit, which he has not

16

received. *See* 28 U.S.C. § 2255(h) ("a second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals"); *see also* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). Finally, whether Defendant is an Indian or not, this Court does have jurisdiction over him as he did not commit the instant offenses in Indian Country.[3] *See United States v. Markiewicz*, 978 F.2d 786, 801 (2d Cir. 1992)(denying Indian defendants' claims that the district court lacked jurisdiction over them for federal offenses committed outside of Indian territory). Accordingly, Defendant's Motion to Dismiss [396] is DENIED, in its entirety.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: December 31, 2008

cc: All counsel of record
Frederick Banks, *pro se*, No. 05711-068, Unit 2AU, P.O. Box 5000, Yazoo City, MS 39194-5000.

---

[3] The Court notes that the situs of criminal activity which led to Defendant's convictions in this action was the South Side neighborhood of Pittsburgh, Pennsylvania, an area which is clearly not Indian Country.